Mr. Okay, our second case is twenty three, two oh eight nine, um, Mr. Good morning, Robert. May it please the court. Robert Massey on behalf of the appellant Ruby Dog Holdings and others. This appeal presents a fairly straightforward, fairly simple, single question. Does a covenant in a nineteen seventy nine deed run with the land or does it not? Stated another way, is this a covenant, a pertinent or is it a personal covenant? The nineteen seventy nine deed in this case ran from snowshoe to a company called a boss and its chain of title is a boss to Whistle Punk, Whistle Punk to my client Ruby Dog. Let's start with some general law. We presume in a deed that anything in the deed runs with the land to the grantee. That is the presumption. What case says that literally anything in a deed runs with the land? I'm sorry, that's the presumption. What case says literally anything in a deed? I'm sorry, I shouldn't have said literally anything, but the Macintosh case, the maze versus hope case says that there is a presumption in interpreting the language of a deed, an easement or a covenant that when we start with an easement or a covenant that it runs with the land. Are you saying that those are exclusive terms, easement and covenant? Exclusive? Those are exclusive of each other. Because my understanding was an easement was a form of covenant. I'm sorry, your honor, they are. I was thinking easement more in terms of the right to traverse a piece of property like a right of way was what I was thinking. But no, an easement and a covenant or an easement and covenant, the presumption runs with the land. The countervailing presumption is unless there is clear language limiting a covenant, it is not interpreted as a personal covenant. The law is we look at the intent of the parties. That's the polar star. That's what we're trying to figure out. What is the intent of the parties? Now, first you look at the deed, you look at the covenant, you look at the language and you try to figure out what did the parties intend. Okay. So let me ask you what I looked at and what the district court looked at. Um, so I look at this deed and I see over and over and over again, it identifies specific things that bind successors and assigns. And I see over and over again where it says that certain things shall run with and bind the land. And then I look at the provision you're trying to enforce. And I don't see either of those things. That's true. Why isn't the overwhelmingly obvious view, like most reasonable interpretation of that is when they meant successors and assigns or run and bind with the land, they said it and here they didn't say it. So therefore that's not what they meant here. That just seems like both as a matter of plain English usage and as a matter of how we construe legal instruments. That seems like the obvious inference. If you say certain things over and over again in one place, not actually in one place, in five or six places, and then you don't say them here, the assumption is you didn't need to say them here because you didn't say them here. Well, I can think of three reasons. First, the language bonds, the land is a reservation. It's put in the deed as a reservation to the grantor. The law is pretty clear that if a grantor is going to reserve something to themselves and it's going to run with the land, you have to expressly so state. So that, the language after the covenant that we're talking about. That was the clause after the privileges or recreation clause. Is it in the paragraph that begins, this covenant is made subject to these? I think so. Yeah, but hold on. That paragraph ends with a colon and that colon is followed by a list. So it seems like, again, as a matter of normal English usage, that paragraph applies to what comes after it, not what was just said before. That's correct. Okay, so then the, which shall run with and bind the land, doesn't actually apply to the provision we're talking about here. No, I agree. My point was, if you're using the language binds the land, that it's used expressly to reserve something to the grantor. That's why it's in there. But Mays versus Hogue clearly says you don't have to use the word successors in a sign. Oh, I agree. So if let's, let's say counterfactually, this deed never used the words successors in a science or shall run with the land. I think the presumption you're talking about could help you, but this deed does use those words over and over again. It's just not in these places. And I don't, so I don't know how a presumption that would say, what would this deed be interpreted to mean? If those words weren't anywhere in the deed tells me how to interpret a deed where these words are all over the deed, just not in the place you want them to be. Well, two more reasons. First, the law is you don't have to use the magic words. Which I just said, I agree with that. But when you use the magic words in one place, isn't that logical inference that you didn't mean to use the magic words in another place? No, look at the privileges and the recreation covenant, the language that is used as part of this conveyance language that we normally use to convey something in real estate transaction. Snowshoe Company covenants and agrees that all guests of any hotel or lodge constructed on the property. It doesn't say any hotel or lodge constructed by a boss. It just says any hotel or lodge constructed. So there's no limiting language. Again, you have to have limiting language if it's a personal covenant. No language here that limits. The devil's advocate, I agree it doesn't say a boss, but you're briefly suggesting the notion of the question about whether it runs to a boss's successors is inseparable from the question of whether it runs to Snowshoe's successors. And I don't know where that notion comes from. When I look at this, it says as part of this conveyance, Snowshoe, not Snowshoe's successors and assigns, Snowshoe. And then it says these other people. So I don't see how the fact that the later purchaser's benefit addresses whether Snowshoe's successors are bound. Those strike me as different questions. Well, at the time, if you look at it, Snowshoe is developing a resort. The resort is referred to in here. And this clause specifically says that it runs to any purchasers of residence units constructed on such property. Snowshoe and a boss both understood and intended that when the covenant was executed, it would run from Snowshoe to a boss and from a boss to any purchaser of a residence. No, again, you're conflating the benefits and the burdens in a way that I don't think is supported by the language of the deed. I agree the benefits run to the successors. I just don't see where it says the burdens run to the successors. The burdens have to run to the successors. There's no way to have the benefit run to people down the deed if it doesn't correspondingly burden. That's not true at all. I can make a contract with you, and I can agree that my obligation. Say I have a contract with you, and I have an obligation to pay you, and then you assign your right to payment to someone else. I still have to pay the person you've assigned your right to payment to. But that doesn't mean that someone assumes my, but then I die, and it's sort of black letter law that people's personal debts die with them. My heirs don't have to pay that, right? Yes, but that's a different question. So it's totally possible to assign the benefits without assigning the burden. But here you're burdening real estate. You're giving, you're saying Snowshoe will allow people who enter onto their property to use lift facilities, to use their property, and they will continue to do that. So I'm saying that there's no way to interpret this except that if Snowshoe is promising, I as the owner will allow people to come onto my property under a license where I agree that if you pay X dollars, you can enter onto my property. That promise touches upon a land. That promise runs with a land. But more importantly, this was a rule 12 motion decided by the court. In the pleadings, the allegation is that Snowshoe Mountain is a successor and interest to this entity and is bound by it. You have to assume that those allegations are true. Those are legal claims. That's a legal, claiming that someone's bound by something is a legal claim. It's not a factual claim. No, it's a legal, excuse me. It's a factual claim that we alleged in the answer and counterclaim, paragraph 22, that Snowshoe Resort, excuse me, Snowshoe Mountain was a successor and interest and bound by the terms. We also, if you look at the- I'm sorry, counsel, but are you saying because you said that we can't look at the deed and interpret it to determine whether or not it actually runs with the land or not? No, no, no, no, your honor. What I'm saying is that the allegation in the complaint is that Snowshoe Mountain is a successor and interest and bound by the terms legally and factually. But also, if you look at the record, and I think it's in the appendix at 702, and I want to make sure of that. It was asked, how is Snowshoe Mountain related to Snowshoe Company? And they admitted in the record that Snowshoe Mountain is the successor and interest. Acquired all the property interests and obligations. Yeah, but that just begs the question of what the interest was that survived, right? I mean, they are down the road, but it doesn't answer the question of what being a successor meant legally. I mean, if, you know, so anyway, don't we still have to grapple with the question that you've been, you know, going back and forth with Judge Hyten's own, which is what's his deeds say? Right. I mean, that's the issue, right? That is the issue. The language should be interpreted, or excuse me, isn't even interpreted, just applied as written. That's all I'm asking this court. That's all that we're asking below. Is that, one, the fact that there is no successors in assigned language in this clause is not evidence. The district court found that it was not. Let me say, I'm sorry, go ahead. You know, in looking at this, I don't think, your argument seems to be, if you look at this particular paragraph in the deed, that's enough to show the intent. Is that, am I right about that? That is my argument with both sides saying that the deed is unambiguous. However, I will suggest to this court, again, it's a de novo review, that there is evidence that the parties intended this. Both sides intended this. The 1981 deed between Whistlepunk and- How in the world does a deed entered years later tell me anything about what people meant years before? Well, because the person who signed that deed, Mr. Bingham. One of the people. Right. And his role is actually key. Mr. Bingham was president of Snowshoe. Mr. Bingham signed on behalf of Whistlepunk. First deed was Snowshoe to Whistlepunk. So Mr. Bingham has the knowledge. Whistlepunk then has an out conveyance to Mountain House. That conveyance in 1981, only two years later, signed by Mr. Bingham, says, it refers specifically to this clause. It uses the language successors in a science. It specifically says the thing that we all wonder about. And you have the fact that through multiple entities, they kept giving that access to the ticket. So, I mean, if you get extrinsic evidence, that's one thing. But you only get there if it's ambiguous, right? If it's unambiguous, we don't look at that. Do you agree? If it is ambiguous, you look at it. If it's unambiguous. And the fact that two sides offer different interpretations doesn't create ambiguity. That's our job, right? Correct. Because both sides saying we're clearly right doesn't mean it's ambiguous. And you, I don't think you've made this argument, and I'm not saying you should have, but you're not making the argument, are you, and if you are, just say so, that the successor in a sign language that Judge Hyten's referred to is sprinkled throughout here. Are you saying that it applies to this paragraph, or are you, so you're, it's not your position that when you say successor in a science on page two and then before this on page three, that that's referring to the paragraph at issue?  You're saying we look at that paragraph and it's enough in and of itself? That's my argument. That if you look at the deed, and look at what was intended here. Snowshoe was building a resort, a ski resort that we've been to. The purpose of selling this property back in 1979 was so people would build hotels, people would build condos. And is that a fact we can consider in interpreting this contract? Well, it's mentioned in the deed. It mentions the resort. It mentions the easements to use. So we don't have to worry about it being extrinsic evidence because it's in the deed. No, but if this doesn't run with the land, then here's the situation we have. Property was sold. Please build hotels on the land. Please invite guests to Snowshoe on top of the mountain to the resort. And if it doesn't run with the land, Snowshoe can now forbid anyone who stays at the corduroy inn from using the facilities. The original grantor can't do that. The only problem is the original grantor is bankrupt and gone. It's been sold like five times since then. No one is saying this wouldn't be binding on the original grantor. At least I don't read the district court is saying. I'm sorry. Snowshoe Mountain can now. Completely different company that is operating decades later who bought it from a chain of people that went through a bankruptcy sale can do it. Correct. Who we say and have alleged that it is a successor and interest. And if you look at the record, they have acquired the property right. So the question is going through bankruptcy doesn't remove the burdens of the land. It may make Snowshoe Company not liable for it, but the land would still be bound by this. Is there anything to the nature of this paragraph when it's talking about ski ticket privileges, lift ticket privileges on other land? That seems different than an easement or a right of way or something like that. Maybe it doesn't. It's not doesn't touch and concern the land in the same way. What's your reaction to that? This is granting a license to enter onto property. This covenant says guest of this property, purchaser of resident on this property, you will have the right to enter onto Snowshoe's property under certain terms and conditions. And those terms and conditions are the same that we will offer our own guests. So it does touch upon the land because you have to be a guest of a hotel. You have to be a licensee or you have to be a purchaser. You have to own part of this piece of property to then have that right. You can't just be somebody off the street. So it touches the land. It also touches Snowshoe's land because it is, I am giving you permission to enter onto my land and use my facilities. So I think it touches on both. Two sides. Thank you, Counselor. You have some time left after your colleagues. Bear with me. I left my reading glasses and the language in this key is pretty small. You'll need it. Good morning. May it please the court. My name is Seth Hayes and I represent Snowshoe Mountain Incorporated, the appellee in this proceeding. The district court's decision below that this is not a covenant running with the land should be upheld for two reasons. First, the clear and unambiguous intent by Snowshoe Company and ABOS is that the burden imposed in this covenant does not pass to the heirs and successors of Snowshoe Company, as Judge Huygens commented before. And the second reason is that it can never be a covenant running with Atlanta Common Law because the burdened estate, that's the recreational facilities of Snowshoe Company, does not touch and concern the land conveyed to ABOS. And ABOS has no privity with those recreational facilities. That's McIntosh, Rawlings, Tenet cases. But the first point I want to address is the argument that Ruby Dog makes, the appellate makes concerning the presumptions in this case. And a couple points here. First, presumptions are only applicable if the deed is ambiguous. If the deed is unambiguous, we never get to the presumptions. Second, appellate states that there's a presumption that all covenants in these deeds, including this one, shall run with and bind the land. The problem is there is no such presumption in West Virginia Common Law. All right. Would you say that again, what you believe his definition of the presumption is? I think appellate states, and we disagree with this presumption, the appellate stated in his brief, as one of the points of error and in opening in his arguments, that there is a presumptions in West Virginia that all covenants and deeds shall run with and bind the land. And that presumption does not exist in West Virginia Common Law. Appellate cites Mays v. Hoag, and as Judge Traxler pointed out, that's dealing with rights of ways and easements. Rights of ways and easements are a type of servitude. So are rights of first refusal. So are covenant. They're all different types of servitudes. But why isn't what we have here positing that it's some sort of property interest? If it's a property interest, why isn't it an easement? It seems like this is an easement, not a covenant. If it's any type of property interest at all. Well, it's not an easement for this reason, Judge. One, we're talking about, if you look at the benefit here, it's a privileges and amenities. The dispute here is about a promotional marketing. It's discounts, discounted ski tickets, discounted lift tickets is what's at issue here. Second, they say multiple easements throughout the deed in question. I mean, there are several easements at issue here, non-exclusive easements and exclusive easements. So things like power lines and things like that. In every single instance, they qualify it as an easement. And they go one step further, Your Honor. They state that the easement shall bind the successors and heirs, or in order to the benefits of one of the parties, language that's omitted from the recreational facility. And the reason that's significant is this. Mays v. Hogue, Post v. Bailey, and even the McElroy case in 2020. When we talk about easements, they talk about the common law. And at common law in West Virginia, easements are presumed to run with the law. Unless there is a clear intent of the parties to the contrary. But I invite this court to look at the McElroy case, which is 2020, which appellant cites. In that case, they're talking about two different types of servitudes. Now, we disagree with the proposition that McElroy stands, that it's cited by the appellant that it somehow, all easements now, or all covenants are intended to run with the law. Because if you look at McElroy, there's two different types of covenants in that question. Rights-of-way, rights of first refusal. And they state that the easements and rights-of-ways are presumed to run with the land at common law. But they talk about a separate type of servitude, and that's right-of-first refusal. And actually, in McElroy, the court indicated that at common law, rights-of-first refusal are presumed to be personal. The easement, or the, the easement. The covenant in this question, at issue in this, in the recreational covenant, is more akin to the right-of-first refusal. We're not talking about an easement, an ability to go over one's property. Those are set forth elsewhere in the deed. We're talking about a privilege, amenity, an access, not even access, but a promotional advertisement, or a promotional, a marketing effort, on behalf of Snowshoe Company. Well, let me ask you this. Going back to the point your colleague was making at the end, does your interpretation allow Snowshoe to restrict use of the slopes to only those people who are renting from them, and ineffectively exclude the public, the members of, the guests of Ruby Dawn? It wouldn't make much sense for a resort community to sell tickets. Is it consistent with your view? Our view is this. This isn't really briefed here, and it's more of an issue for phase two, but they use, there is evidence, and it's not an issue in this case. My question, can you answer yes or no? I'm going to answer it as no, your honor, because the ski facilities, the party, the ski slopes. I've got hearing aids. I'm sorry. I'm sorry, Judge Traxler. The ski slopes, and it's the position we take in our complaint. The ski slopes and ski facilities are actually different than the recreational facilities. There is evidence, not an issue in the 12C argument here, but for purposes of this question, that they've treated ski slopes differently than they did recreational facilities. Again, this is extrinsic evidence because the parties did conduct discovery here. Again, not an issue in 12C. Do continue with regard to Ruby Dawn's guests regarding the use of slopes. They can use the slopes. They're not recreational facilities. Please, hold on. Judge Traxler is asking what your view that your client could do, and you're responding by saying what your client is, in fact, doing. So let me ask, if your client wanted to, is it your position that your client could say, no one uses these ski slopes except guests at our resort? Absolutely, your honor. They can do that. They could do that. They could do that. They don't do that, but they could do that. Is that not a factor in our analysis of what our interpretation, or what the interpretation of this deed would allow? It's not for a few reasons, your honor, and that's this. We have to get to the intent of the parties. The overarching principle here is what is the intent between Snowshoe Company and a boss? But doesn't the intent have to be reasonable? I mean, these people, Ruby Dawn's predecessors, are investing millions of dollars in building a hotel, and you say your position is, frankly, we could forbid their guests from using our slopes, which means they're going to take a loss when they sell it? It's, I mean, your honor, it's not a court's job when interpreting a contract to construe an unambiguous deed. We have to apply the unambiguous language. All those inequities are just the way. That's just the way they drafted this deed at this time. To be clear, that's not happening, but this is the clear intent of the parties is to limit this. Yes, your honor. I'm sorry to talk over you, but under your interpretation of this deed, is every other obligation and benefit and burden, does every other benefit and burden run with the land except the recreational covenant?  In this particular deed, the benefits, the burden to state, which is really the critical issue in determining whether it runs with the land, does run, or there is a conveyance, there's privity and a conveyance of the burden to state within the deed itself. Yes, your honor. It's okay, I tried to be, I may have asked a bad question. I apologize, I'm not clear. The answer is yes. I believe so. Yes, your honor. Let me, please let me finish. You stop and I'll give you plenty of time just so we're clear who's, what I'm asking. Let's say I magically put a blue pencil in and said that this recreational paragraph was not in the deed. Let's assume we got this deed absent the recreational paragraph. Would all the rights and obligations run with the land? I believe the language of every single provision, the answer to that is yes, your honor, because they do state either it applies to their successors and signs, or it's intended to run with the land. The recreational covenant's the only covenant that omits that language. So can I ask you a question that relates to that? So I understand your argument that all these other provisions say this, and it seems like a very good argument for you that all this language and its omission here probably has to mean something the way courts construe instruments, but can we just take a step back and could I ask you a question that I was mulling with? Why would parties do this? And not why did these parties actually do it, but why would an objectively reasonable party might have done it? So you've created a world in which this deed has all kinds of things that run with and concern the land, and then we get to this one paragraph, and your view is that the burdens don't run with the land. What is a reason that someone might have done that? Your honor, first of all, it helps the boss sell these units. That's the intent. I mean, that's one possible intent. Overall purpose is it's not our job when the language is clear to understand why they did or didn't do something. They made it clear within the language of the deed. That may be right, but... But sure, you can, you can. I mean, it helps a boss sell condominium units. That's one purpose. No, no, no. Sorry. Why might... Let me rephrase. Okay. I'm sorry. Why would a party have listed all these things in the deed and said all of these things continue to burden the estate? Right. And then decide this thing doesn't. What is the reason why a hypothetical drafter might have done that? Again, the answer is because a common law, this cannot run with the land. For this reason, there's two separate estates here. There's a burdened estate, which the recreational facility sits on and a benefited estate, which goes to a boss. And if you look at McIntosh, if you look at Rowling and Tenet, we're concerned not just with the benefit estate and whether the benefit benefits the landowner. McIntosh says, of course, the benefit always benefits the landowner. But the burdened estate, is that burdened estate, those recreational facilities, does that touch and concern the land conveyed to a boss? In this case, it doesn't. So the argument then would be, well, the parties probably would have liked for it to, but they thought that it couldn't. So that's why they didn't say it? No, the argument is the drafters understood the common law. And they knew that this particular provision, the way it was set up as a marketing proportion, basically, Your Honor, cannot run with the land at common law. I mean, Ruby Dog makes the argument that these cases are outdated. Right? And the Westerners moved on. We disagree with that. But let's step back for a moment. This deed was drafted in 1979. The cases we cite, 1940s, 1950s, that's akin to us citing cases from the 1990s. Now, some of our law clerks might think that's really old, but I don't. So two questions. And the recreational paragraph talks about the guest of the hotel and lodge, and then it talks about and all purchasers of residences. Correct? Correct, Your Honor. So let's assume, you know, John Smith purchased a condo from a boss. Did that, and did that, did Mr., does Mr. Smith have the right to the benefits of this paragraph after Snowshoe Company sells the land?  She does as long as Snowshoe Company still owns the land. That's true. My question's related to that. Your position, as I understand it, is that the recreational paragraph gives rights only to a boss. Is that how y'all pronounce it? A boss. I think it's, your pronunciation is saying what we're using. Okay, whatever. Do they not extend then to the lots that a boss might sell to individual purchasers? No, I believe that was Judge Quattle-Wong's question. It may have been. And yes, it does. He's a lot smarter than I am, and I'm trying to dumb it down to my level. I understand. That wasn't a good answer to say, I'm ashamed of that. I take that. I understand that. All right, well, your point is taken, Judge Quattle-Wong. Let me answer it this way. Yes, that's the intent of the courts. Yes, what? It would apply to the residential purchasers. They have rights that a boss doesn't have? It's a benefit to a boss. It helps them sell the condominium units. But the answer to my question is these individual purchasers from a boss have rights that continue under this paragraph, but a boss doesn't. A boss is continuing to sell residential units. Is that yes or no? Yes, I believe the answer is yes. That's the clear language of the parties. Now I'm confused. I thought you said the exact opposite to me. I thought you said that these individual purchasers' rights were the same as a boss, that once Snowshoe sold it, they had no more rights under this paragraph. Let me make sure, because I think, apparently, I'll try to be more precise with my words. The intent of this paragraph is clear that hotel guests, regardless of who those hotel guests are— Who's hotel guests? It doesn't limit the benefit to a boss in this paragraph. A boss is not specified. I do want to point out, the important point here is it does specify the covening party, the Snowshoe Company. But the intent, the clear language, if we apply the clear language of this covenant, then hotel guests of any hotel constructed on this property and residential purchasers of condominium units constructed on this property shall get the same privileges and amenity that Snowshoe Company offers its guests. That's the clear language of the covenant. The key point here is we can't conflate benefit with burden. It doesn't specify a boss, as Ruby Dog points out. That's correct. It does specify Snowshoe Company, not once, but twice. It doesn't say Snowshoe Company and its successors and assigns will provide these benefits and amenities. It doesn't even say a generic owner of this resort community, like it does in the same covenant with hotel guests and residential units. It says Snowshoe Company and only Snowshoe Company will provide the privileges and amenities that Snowshoe Company and only Snowshoe Company offers its guests. Herxthal, that's the case where the court construed a personal covenant despite the clear intent of the parties. And in Herxthal, the court said, look, this is a personal covenant despite what they state. So before you talk about that case, I think I understood that answer to be that the guests of a boss or whoever builds a lodge and purchasers of residence from a boss are treated the same way. They are, Your Honor. They both had rights while the entity that I'll call Snowshoe One. While Snowshoe One owned the resort, they all had rights. And now that Snowshoe One doesn't own the resorts, none of them have rights. Exactly, Your Honor. That's our position. That's the clear language of the covenant. So I said second. I've got a second question, and here it is. We're dealing with case law on some topics that some people would say aren't crystal clear. You may disagree with that, and if you do, that's fine. But there's state law issues. Is this something that would make sense for us to certify to the West Virginia Supreme Court for resolution? Do you have a position on that? I don't believe it's necessary, Your Honor, because West Virginia has already answered this question, and they've never overruled the common law. And under the West Virginia Constitution, Article 8, Section 12, maybe Section 13, West Virginia adopts the common law as existed at the time of the Constitution. We've seen these cases apply in the common law, West Virginia. And the Constitution states that unless that common law is explicitly overturned, either through subsequent decision or statute, the common law is still in effect. There is no cases, nor does Ruby Dog cite any case, which states that these common law factors that we've discussed are overturned. They're still in effect. Moreover, even if you look at Ruby Dog's argument, which is the courts have sort of moved on from this, it's still a holding in those cases. What the courts focus on is the intent. Let's strip everything away. The intent of this covenant is for Snowshoe Company and only Snowshoe Company to provide these privileges and amenities. The second point I want to address is the argument that we should simply look at this covenant, as Ruby Dog suggests, in isolation. But that contravenes well-established deed and contract interpretation principles. When we interpret a deed such as this, we are instructed, courts are instructed to look at all four corners of the instrument, not just one covenant in isolation. And moreover, when you do that, when you look at the deed as a whole, you're required to give effect to all parts of that instrument and not render phrases superfluous or redundant. Here, the parties made explicitly clear every single covenant easement provision in this deed, they wanted to run with or bind or inert to the benefit of one of their successors and heirs. They said so. Why? They used that phrase. And Tiffany's on real property tells us when you use that phrase, it's legally significant. When you use it, it's important. And when you don't use it, it's also important. Why isn't it reasonable to say all those uses signify that all parts of this deed were intended to run with the land? I know your response is, well, that language is not in the paragraph issue. And that may be a cheat in that argument. Why is it fatal to the argument that if you look at this as a whole, they're saying this over and over, and there may have been an omission in this paragraph, but the intent is everything here runs with the land. Because it would render those other phrases superfluous. Well, no, it wouldn't render them superfluous. The fact that they're using them throughout the deed means they're intending for all these things to run with the land. They just happen. And if you didn't have any of those, render them superfluous would mean you don't have to say those at all. I'm making a slightly different position that they matter. They signify the overall intent that everything runs with the land. And the fact that there's not one in that paragraph is an oversight. I think in deed interpretation principles, and this is the Harvard case, that contravenes deed interpretation. When drafters have a phrase in mind, and they clearly do here, when they use it, they mean it. But equally, when they don't, they don't. And that's the Latin maxim, expressio unis, exclusio alterius. And I'm sure I butchered that. My Latin teacher would be very disappointed. I didn't have Latin here. But the maxim is you expressly mention one thing that implies you intentionally omit the other. Thank you, your honors. I'll be very brief. The hypothetical that you ask, Judge, I think is very telling. Okay. Which is why would any reasonable person have a personal covenant that only Snowshoe Company is bound by, and only a boss gets the benefit of, in a situation where we're trying to develop a resort and convince people- Well, wait, hold on. Your friend on the other side's position is not that only a boss. As we eventually clarified, his position is only Snowshoe One is bound, but everybody else benefits as long as Snowshoe One still owns it. That's the hypothetical covenant we're talking about here. Okay. Why would anyone agree to that? I mean, the district court didn't base its decision upon that. In the appendix 506, Snowshoe Mountain admits that they acquired any real property interest held by Snowshoe Company. But more importantly, your hypothetical- Let's take it just one slight step further. Snowshoe One develops the resort. Snowshoe One sells property to a bunch of people and says, please invest millions of dollars. And you do. And then Snowshoe One sells all their interest to Snowshoe Two in 1980, one year later. Or the next day. Or the next day. And then takes the position, nobody but us can use the resort. Nobody but our guests can use it. Snowshoe Company had the duty. Snowshoe One had the duty. Snowshoe Company Two now exists. And every guest can't use our facility. What's going to happen? Well, now we have a fire sale. Because people have built condos on a mountaintop resort that's a ski resort and you can't have your guests ski. So if that- I mean, I hear you. But are we supposed to interpret the deed like that? Let's assume we say, as a matter of black and white contract, that's what this deed says. You disagree with that. I get that. But let's say it unambiguously says, this only is an obligation for Snowshoe. And there's no other way to read the agreement. But that it has that harsh reality that you articulated and Judge Traxler articulated. Are we supposed to consider that harsh reality? I think you're trying to figure out what is the intent of the parties. That's the polar star. But if the best intent is from the language that the parties agree to, and it's clear as clear could be that this only applies to Snowshoe Company, it seems like you're asking us to look outside what is written, at least in this hypothetical, and say, well, no one would do that. Well, in the hypothetical, they did. It's clear. And you're looking to, like us, to, I think, maybe fix the harshness of the terms. I think what I'm trying to, and maybe I'm not doing a very good job of it, is to say that that harshness shows that that couldn't have been the intent. That the language of the deed, the language of the covenant, clearly establishes that the parties thought this ran with the land. Because it goes to purchasers. It has to run with the land if it goes to purchasers. They also had to have believed that Snowshoe Company— You've said that now several times. I don't know why that's true. In order to go to purchasers, all it has to do is bind the original grantor as a matter of contract. Why does it have to run with the land to go to purchasers? Why isn't it just a contractual promise of the original grantor? It doesn't say purchasers from a boss. It could be purchasers on down the chain.  And so, again— That just means people can assign their contractual benefits multiple times. I can have a contractual obligation to pay you, which you assign to her, which she assigns to him. And I'm still bound to pay him. Correct. Except for the difference between what you're suggesting and what I'm suggesting here is, this is in a deed. This is a document which transfers interest in real estate with the presumption that it follows the land. Can I say a couple— With the presumption that a personal covenant must be clearly stated. And it's not here clearly stated. So if we have a question, what's clearly stated? And we have this vacuum, arguable vacuum. Then we come down on the side of it runs with the land. And— So, I have a couple questions about certification because it came up. Which party decided this litigation was going to be in federal district court? The plaintiff was Snowshoe Mount. Who removed this case from state court to federal court? The— That was your client, right? That's correct. Did you ever ask the district court to certify before you lost this case before the district court? Neither party asked for certification. So that's a no? That's a no. And have you ever asked us to certify this case to the court? I have not, Your Honor. Okay. I have one question before you finish up. West Virginia courts frequently cite to the restatement on property. Isn't it a factor in determining the intent of the parties whether or not a large investment is contemplated by the grantee buying the property? I think that you look at all the circumstances, including the surrounding circumstances to the deed, the investment, what was the intent of the parties, and clearly the deed references not only Snowshoe Company, it references Snowshoe Resort. The easements for the roads, you can use the roads to go to Snowshoe Resort. You can do this for Snowshoe Resort. It contemplates that this is a development as part of Snowshoe Resort, not merely just this little piece of property. You can use our roads. And one last point, if I may. The question of the use of successors and assigns is actually when things are granted to the grantee. Successors and assign language is not used in description of Snowshoe. Now, indicating that the parties did not think that you had to use successors and assigns to make it bind and run with the land, because clearly the covenants that are listed do run with the land. Thank you, counsel. Thank you. We'll come down and agree, counsel. Okay, and we'll proceed to the third case after that.
judges: A. Marvin Quattlebaum Jr., Toby J. Heytens, William B. Traxler Jr.